643 So.2d 371 (1994)
Wanda GORDON, Individually and on Behalf of the Minor Child, Arzelia Gordon
v.
Jo Ann LEVET, et al.
No. 94-CA-279.
Court of Appeal of Louisiana, Fifth Circuit.
September 27, 1994.
Rehearing Denied October 17, 1994.
*372 Jerald Andry, Gilbert Andry, III, New Orleans, for intervenors-appellee-appellant.
Walter Dumas, Baton Rouge, for plaintiff-appellant-appellee.
Before DUFRESNE, WICKER and GOTHARD, JJ.
DUFRESNE, Judge.
This appeal involves a dispute between two law firms over the apportionment of legal fees due under a contingency fee contract entered into with personal injury claimants, Wanda Gordon individually and on behalf of her minor child, Arzelia Gordon.
On August 14, 1992, Wanda Gordon and her daughter Arzelia were seriously injured in a head-on collision. Ms. Gordon initially retained attorney, Michael Heltz, but he was later discharged with full payment of his cost and fees. After which, on September 2, 1992, Ms. Gordon retained attorney Gerald N. Andry, Jr. of the law firm of Andry & Andry to represent her and her daughter with a 33 1/3% contingency fee contract of any settlement. Andry filed a lawsuit on behalf of the Gordons seeking damages for their bodily injuries, naming Ms. Joann Levet as the defendant driver and State Farm Mutual Automobile Insurance Company as her liability insurer. State Farm provided coverage limits of $100,000 per person, $300,000 per occurrence, effective coverage of $200,000 to the Gordons. Farm Bureau Insurance Company was also named as the uninsured-motorist insurer providing coverage to the Gordons of $10,000 per person, $20,000 per occurrence, thus a gross insurance coverage of $220,000. Andry successfully negotiated a settlement with State Farm, agreeing to pay its policy limits of $200,000 to settle all claims against it and Ms. Levet, additionally Farm Bureau agreed to pay its policy limits of $20,000. Andry strongly suggested that Ms. Gordon settle her and her daughter's claims against the parties as quickly as possible.
However, before signing any releases on November 17, 1992, Ms. Gordon dismissed the Andry law firm and entered into another contract with attorney Walter Dumas to represent her and her daughter for a 40% contingency fee. The Andry law firm intervened in the lawsuit and sought full recovery of their fees based on 33 1/3% of the negotiated settlements with the insurers.
Dumas was successful in having State Farm increase its settlement offer by $6,969.86, which represented interest on the settlement, for an increased gross settlement with the insurers of $226,969.86. In its intervention, the Andry law firm seeks full recovery of fees on the settlements completed before their dismissal.
After a hearing the Trial Judge set the attorney's fees at 40%, the higher of the two contracts signed by Gordon, and based on the time statements submitted by the two law firms the court awarded Andry and Dumas 50% each of all attorney's fees relative to the settlements with State Farm and Farm Bureau. Each law firm received $45,294, from which the Andry law firm has appealed contending the trial court erred in its application of the directives of Saucier v. Hayes Dairy Products of Louisiana, Inc., 373 So.2d 102 (La.1979).
The Andrys argue that this appeal should be decided based on the letter and spirit of the decision in Saucier. The Andrys intervention seeks to have its fee protected under the provisions of LSA-R.S. 37:218, which permits on attorney to acquire as a fee an interest in the subject matter of a client's claim and protects that interest in the event *373 the client settles the cause of action. In Saucier, the Louisiana Supreme Court has interpreted 37:218 as creating ... "no more than a privilege granted to aid the attorney's collection of a fully earned fee out of the fund" yielded by satisfaction of the client's claim.
In Saucier, the Supreme Court held that the contingent fee was to be apportioned between the discharged and successor attorney according to the respective services and contributions of the attorneys for work performed and other relevant factors. In Saucier, the court stated that in order for an attorney to collect his full contingency fee, "... the contract conditions payment of the full 1/3 upon performance of all or substantially all legal services necessary to accomplish settlement or other disposition which reduced the claim to damages...." The court found that "the amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixed compensation for the attorney prematurely discharged without cause...."
On February 1, 1993, State Farm filed a concursus proceeding and placed the attorneys' fees in the amount of $68,989.94 into the registry of the court, withholding 1/3 each of the settlement of the Gordon's damages, not the 40% fee contracted by Dumas. The balance of the $200,000.00 was delivered to the Gordons. Ultimately, Farm Bureau settled with the Gordons for $20,000, 1/3 of which held in escrow by the Andry law firm. It was agreed upon by Andry, Dumas and the trial court that the resolution of the concursus proceeding, the intervention and funds held in escrow by Andry would be decided by the trial court in one proceeding.
It is clear from the record that on November 10, 1992, Andry received settlement documents from State Farm for $100,000 for each claimant. At this point Andry had not been discharged and according to Saucier, Andry's fee is effectively earned. Shortly thereafter, Farm Bureau offered its policy limits of $10,000 for each claimant. At this point Andry had not been discharged and according to Saucier, his fee was earned.
After which, the Andry law firm was discharged and Dumas was retained to continue the settlement and/or litigation. Dumas was successful in getting State Farm to increase its offer by $6,969.86; representing interest, thus, Dumas' 40% fee should be calculated on this amount.
The record reveals the only increase in the amount of the settlement was the $6,969.86 from State Farm. However, Dumas did add the Louisiana Department of Transportation and Development; the Pontchartrain Levee Board and a Trucking Company as defendants. Andry does not assert a claim for attorneys' fees on any future money recovered from these defendants after his discharge.
Andry argued that as a result of his efforts State Farm forwarded drafts and releases, offering the policy limits of $200,000. Farm Bureau had already offered its full policy limits of $20,000, although the drafts and releases had not been delivered. Andry presented the offers to Ms. Gordon and strongly encouraged her to accept them.
Our law strikes a balance between the protection of attorney's rights under contingency fee contracts as laid down in LSA-R.S. 37:218 and protection of clients from the exaction of clearly excessive fees. See Code of Professional Responsibility, DR 2-106, in effect at the time of the confection of the Andry and Dumas contract, and Saucier. We recognize the appropriate standard for appellate review is the "manifest error clearly wrong" standard, which precludes the setting aside of a trial court's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety Rosell v. ESCO, 549 So.2d 840 (La.1989).
After our review of the entire record, we find the settlements negotiated by Andry with State Farm and Farm Bureau would entitle and justify the 1/3 contingency fee, at the same time we are keenly aware of the many hours spent by Dumas to provide legal services to the Gordons. Consequently, we find the 40% fee inappropriate and reduce the fee to Andry's 33 1/3% of the $220,000 settlements and Dumas' 40% with regard to the $6,969.86 and any settlements or judgments obtained from any other defendants thereafter. Furthermore, the apportionment *374 of the legal fees should be as follows:
1. Andry's law firm to receive 95% of the 33 1/3% attorney's fees on the $220,000, for an amount equal to $69,666.00.
2. Dumas to receive 5% of the 33 1/3% attorney's fees on the $220,000.00, for an amount equal to $3,667.00.
3. Dumas shall receive 40% based on his contract with the Gordons of the $6,969.86, for an amount equal to $2,788.00.
The Andry law firm shall not receive any attorneys' fees regarding settlements or judgments with other defendants after being discharged as attorneys of record. We are authorized to inquire as to reasonableness of attorney fees as part of our prevailing inherent authority to regulate the practice of law. State, D.O.T.D. v. Williamson, 597 So.2d 439 (La.1992).
For the reasons given above, we amend the trial court's decision changing the percentage of attorney's fees and the apportionment of the recovery of the attorney's fees between the discharged attorney (Andry) and the successor attorney (Dumas) as set forth. Other aspects of the trial court's decision which are not inconsistent with our decision are affirmed.
AMENDED AND AFFIRMED AS AMENDED.
GOTHARD, J., concurs.
GOTHARD, Judge, concurring.
I agree with my learned colleagues in the analysis of the law and in all subsequent conclusions of law, in every respect, save one, and that is I believe the Andry Firm should receive the entire 33 1/3% fee of the $220,000 settlement they were responsible for, rather than 95% of that amount.
When Mr. Dumas became the attorney for plaintiffs, he entered into a contract with them that called for a contingency fee of 40% rather than 33 1/3% that was in existence with the Andry Firm. If Mr. Dumas can recover additional funds for the clients that the Andry Firm was unable to, then the additional 6 2/3% attorney's fee on these additional funds might be justified. But to attempt to charge the clients an additional $14,652 on the $222,000 already agreed to by the respective insurers is unjustifiable and unconscionable.
Based on the record we have reviewed, the Andry Law Firm could not be faulted in any way. If this is so, and if Mr. Dumas did not earn his clients one dollar more, then why should the Andry Law Firm be penalized even 5% of their fee? Regardless of any and all efforts on behalf of the clients, Mr. Dumas produced nothing more than $6,969.86, the accrued interest, and he has received 40% of this. I agree with the majority that he is entitled to this and to any further fees that may result from this case, but that is all he is entitled to.